**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **FRANK MARTIN AYALA SUAREZ,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 6:26-cv-3169-MDH** |
| ) | |
| **JIM ARNOTT,** *et. al.*, ) | |
| ) | |
| **Respondents.** ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is her Verified Petition for Writ of Habeas Corpus in which she argues federal statutes and the Due Process Clause require that she be released or granted a hearing. The Court agrees with Petitioner's Constitutional arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner, Frank Martin ("Karolina") Ayala Suarez entered the United States without inspection on or about August 2, 2023, and was placed under arrest before being released on her own recognizance. She received a Notice to Appear (NTA), charging her with having entered the United States without inspection, and was placed in removal proceedings. 8 U.S.C. § 1182(a)(6)(A)(i). On July 30, 2024, Petitioner, with the assistance of counsel, filed an I-589, Application for Asylum and for Withholding of Removal with the Immigration Court.

Petitioner has no criminal history. On March 17, 2025, Petitioner received notice of an in-person hearing scheduled for September 19, 2025, at the Miami, Florida Immigration Court. When Petitioner appeared for her hearing at the Miami, Florida Immigration Court, the Judge granted

1

DHS's opposed motion to dismiss. As she left the courtroom on September 19, 2025, she was again arrested and detained by ICE. She was initially held in DHS custody at Krome County Detention Center in Miami, Florida before being transferred to East Camp Montana in El Paso, Texas. Petitioner had been compliant with all terms of her release and has no criminal history.

Nearly two months after detaining her, on November 4, 2025, DHS filed a Notice and Order of Expedited Removal, charging her with not being in possession of a valid entry document. 8 U.S.C. § 1182(a)(7)(A)(i)(I). On November 6, 2025, DHS administered a credible fear interview and determined that she did not establish a reasonable possibility of persecution in a country to which she may be removed because there is no reasonable possibility that she would suffer the harm she fears, and Petitioner had not established a reasonable possibility of torture in a country to which she may be removed because she had not established that there is a reasonable possibility that she would suffer severe physical or mental pain or suffering. Following this decision, Petitioner requested Immigration Judge review.

On December 17, 2025, Petitioner was scheduled for review of the DHS Credible Fear Determination on December 19, 2025, before the Immigration Court in El Paso, Texas. This hearing was rescheduled twice before Petitioner was transferred to Greene County Jail in Springfield, Missouri on December 26, 2025. On February 9, 2026, Petitioner appeared with counsel via video for her review of the DHS credible fear determination. The judge ordered that the DHS credible fear determination is vacated, specifically finding that Petitioner rebutted the presumption of asylum ineligibility and that Petitioner established a significant possibility of eligibility for asylum.

2

On February 21, 2026, Petitioner received a new NTA, again charging her with having entered the United States without inspection and not being in possession of a valid entry document. 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I).

On March 11, 2026, Petitioner was denied bond by an immigration judge in the Kansas City, Missouri Immigration Court. The judge ruled he was bound to deny the request for bond pursuant to the precedent set in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Pursuant to Respondents' new policy on interpretation of immigration statutes, Petitioner remains subject to mandatory detention. Petitioner is currently detained at Greene County Jail in Springfield, Missouri.

Petitioner has filed this writ seeking release, or at a minimum, any process at all. The matter has been fully briefed by each party. Petitioner bases the writ on statutory and Constitutional grounds under the Fifth Amendment.

While the statutory grounds upon which Petitioner relies has, for the past twenty-nine years and five presidential administrations, been interpreted to mean that he was entitled to a bond hearing during his removal proceedings, the new presidential administration has adopted a novel interpretation of that statutory scheme.

A divided panel of the 8th Circuit recently agreed with this administration's interpretation, in a decision still subject to rehearing, en banc rehearing, or appeal. At this time, however, this Court is bound by the panel's interpretation of the statutory scheme. So, given this change in long standing statutory interpretation, this Court is left to analyze the writ on Constitutional grounds.

While on these facts, it is apparent to the Court that regarding evaluation of danger or flight risk, no process has been afforded to Petitioner and she has been deprived of her rights under the

3

Fifth Amendment, courts have typically relied on a more detailed and contextualized analysis, and the Court will do so below.

### **DISCUSSION**

"No person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. First, Frank Martin ("Karolina")  Ayala Suarez, is a person. She is a person who was exercising a liberty interest in not being detained. Those liberties were stripped by government action. What is left for this Court to decide is whether she received due process of law in those actions. Respondents claim issuance of a Notice to Appear satisfied Petitioner's Due Process rights.

Respondents claim Petitioner is treated as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A), and therefore she is entitled to no process beyond the issuance of a Notice to Appear. They contend they can detain her for an indefinite period of time without any opportunity for a hearing. Respondents rely heavily on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) and *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708, 1714, 155 L. Ed. 2d 724 (2003). However, these cases recognize limited procedural rights in the *admission* context, not the detention context, and are factually distinct from the case at hand.

The petitioner in *Thuraissigiam* did not seek release from custody; he sought additional review of his asylum claim. The Court expressly noted that "the legality of his detention is not in question." *Id*. at 122. Petitioner here does not ask this Court to admit her or to alter her immigration status, so the only holding in *Thuraissigiam* is inapposite. Here, Petitioner seeks only what due process requires: an opportunity to have her custody reviewed.

The facts in *Thuraissigiam* are distinct from the facts of the present case. The petitioner there was apprehended "25 yards" inside the United States, effectively at the border. *Id*. at 139. By contrast, Ms. Ayala Suarez has lived in the United States for over two years. She was arrested on September 19, 2025, while leaving the courtroom where the proceedings in her asylum case took place. Petitioner had been compliant with all terms of her release and has no criminal history

These distinctions are dispositive and *Thuraissigiam* is inapposite. A lengthy discussion of the plenary power to control which individuals outside the United States may be permitted to enter is not the relevant question here. The issue here is whether the United States can suddenly and indefinitely detain a twenty-three-year resident.

The court in *Demore* did not discuss detention of all noncitizens, it explicitly discussed "detention during removal proceedings for a limited class of deportable aliens" who had committed serious crimes. *Id*. at 518. It found that mandatory detention under §1226(c) was constitutionally permissible for the specific subset of people Congress listed including aggravated felons who had already had their Due Process rights during their criminal proceedings. *Id*. at 510. The court in *Demore* did not rule out Constitutional challenges for people like Petitioner who have no criminal convictions or other factors which mandate classification under §1226(c). *Demore* does not preclude Petitioner's Due Process claim.

**<u>Due Process Analysis</u>**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the

Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The Court disagrees with Respondents' argument that Petitioner's Due Process rights are limited solely to the issuance of a Notice to Appear. Under *Mathews*, Due Process is "flexible" and:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893 (emphasis added).

Private Interest

Undoubtedly, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). Petitioner has been held in a county jail—in conditions indistinguishable from criminal incarceration— since September 19, 2025. She is unable to return to her family and the life she has created. Every day that passes under this unlawful detention is a day that cannot be recovered. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (first Mathews factor strongly satisfied where petitioner was "locked up in jail" and "could not maintain employment or see his family or friends or others outside normal visiting hours").

Risk of Erroneous Deprivation

After the Fifth Circuit's ruling on interpretation of the statutory arguments in this case, the court in *Alfonzo-Mujiuca v. Thompson*, Case No. SA-26-CA-00457-XR (W.D. Tx. 03/13/2026)

6

found that the risk of erroneous deprivation of petitioners' rights in these cases is high. The Court found:

> Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya,* 189 U.S. at 101. And the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly,* 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits). Here, the risk of an erroneous deprivation of Petitioner's rights is high. Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration judge substantially reduces this risk. *Cf Demore,* 538 U.S. at 531-32 (Kennedy, J., concurring) (reasoning that "due process requires individualized procedures to ensure there is at least some merit to the" charge and detention). An individualized analysis ensures the purpose of detention is not punitive.

*Alfonzo-Mujiuca* at 23.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* at 333. Petitioner's continued detention without an opportunity to be heard is the type of erroneous deprivation *Mathews* intends to stop. The basis for her detention and evaluation of her danger or flight risk deserves a hearing. Nothing in the record shows Petitioner poses a danger or flight risk. She has lived in the United States for over two years and has a zealously pursued her asylum claim.

<u>Balancing of Interests</u>

The final factor directs the Court to weigh the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with the regulation, including the fiscal and administrative burdens of an additional or substitute procedural requirement. *Mathews* at 335. The government identifies no interest in detaining Petitioner based

7

on danger, flight risk, or obstruction of removal. A bond hearing would not undermine immigration enforcement; it would ensure that detention is exercised lawfully and in accordance with the Constitution. Here, the Government's interest in detaining Petitioner without Due Process is minimal.

In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that her continued detention violates her Due Process rights. Petitioner shall be immediately released. Release is the customary remedy in habeas proceedings. *See* 28 U.S.C. § 2243 (the habeas shall "dispose of the matter as law and justice require."); *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) (finding "that the traditional function of the writ is to secure release from illegal custody"). Additionally, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do following *Matter of Yajure Hurtado,* 29 I&N Dec. 216, 220 (BIA 2025), and would be futile.

On March 11, 2026, Petitioner was denied bond by an immigration judge in the Kansas City, Missouri Immigration Court after an El Paso immigration judge found that that Petitioner rebutted the presumption of asylum ineligibility and that Petitioner established a significant possibility of eligibility for asylum because the  Kansas City judge is bound to deny the request for bond pursuant to the precedent set in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). DHS provides no alternative mechanism for individualized custody review. Petitioner has no forum, administrative or judicial, through which she may seek release based on her circumstances. This is not minimal process. It is zero process. Respondents' position, that no such process is required, cannot be reconciled with the Fifth Amendment.

**Attorneys' Fees**

8

Petitioner requests an award of reasonable attorneys' fees and costs. Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. Respondents' assertion that Petitioner's procedural Due Process rights are limited solely to the issuance of a Notice to Appear is misguided. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

The Court concludes Petitioner's right to procedural due process has been violated, and she is entitled to immediate release. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

9

1. Respondents are **ORDERED** to immediately release Petitioner from custody.

2. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: April 9, 2026

/s/ Douglas Harpool
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

10